UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| ANDREA MORRISON, *Plaintiff*, | § | |
| v. | § | Civil Action No. _______________ |
| ARANSAS-CORPUS CHRISTI PILOTS, *Defendant*. | § | |

**COMPLAINT**

Plaintiff Andrea Morrison files this Original Complaint against Aransas-Corpus Christi Pilots ("Defendant" or "CC Pilots") and Port of Corpus Christi Pilot Board (the "Board") for gender discrimination, retaliation, and violations of 42 USC 1983, Title VII, and the Texas Commission on Human Rights Act.

**INTRODUCTION**

1. Captain Andrea Morrison is one of only a few female mariners in the shipping industry. In 2017, she was hired by CC Pilots and admitted to the pilot training program to obtain a highly coveted pilot's license.

2. Despite the fact that Morrison was an excellent mariner and days away from obtaining full pilot commission, CC Pilots did not allow her to complete her training, constructively discharging her without cause or due process.

3. During her training with CC Pilots, CC Pilots discriminated against Morrison on the basis of her gender and subjected her to a hostile work environment. CC Pilots held Morrison to a different standard and treated her differently than the male mariners.

**PARTIES**

4. Plaintiff Andrea Morrison is an individual who resides in Houston, Harris County, Texas. She may be contacted through her attorney of record, Eric J. Cassidy.

5. Defendant Aransas-Corpus Christi Pilots is a governmental entity and may be served via its agent for service of process at Port of Corpus Christi Authority, 222 Power Street, Corpus Christi, Texas 78401.

6. Defendant Port of Corpus Christi Pilot Board is a governmental entity and may be served with process by serving its chairman, Charles Zahn, at Port of Corpus Christi Authority, 222 Power Street, Corpus Christi, Texas 78401.

**JURISDICTION**

7. The Court has federal question jurisdiction pursuant to 28 U.S.C. §§ 1332 and 1343 because the claims arise under Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. §§ 2000e *et seq.*) and 42 U.S.C. § 1983.

8. CC Pilots is, and was at all relevant times, an employer in Corpus Christi, Nueces County, Texas and engaged in an industry or enterprise affecting interstate commerce.

**VENUE**

9. Venue of this action is governed by 42 U.S.C. §2000e-5(f)(3) and is proper in the Southern District of Texas because Plaintiff was discriminated against by CC Pilots in Corpus Christi, Texas, and the incidents giving rise to this lawsuit occurred in Corpus Christi, Texas.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

10. On January 28, 2020, Morrison timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and Texas Workforce Commission ("TWC") – Civil Rights Division. The EEOC issued its "Notice of Rights to Sue" (the "Notice").

It has been less than 90 days since Morrison received the Notice and more than 180 days since she filed the Charges with the TWC – Civil Rights Division.

**FACTUAL BACKGROUND**

11. Morrison is a female mariner who worked diligently to ascend in a male-dominated industry. Morrison is one of the few women in the mariner industry to have obtained a captain rank. Even fewer women have had an opportunity to obtain a "pilot" license, the highest rank for a mariner.

12. In 2017, Morrison was hired by CC Pilots and admitted into its pilot training program. From the beginning of her training, Morrison was ostracized and treated differently by the male CC Pilots members. Morrison was the first female admitted into the pilot training program and was told from the onset that "[she] better do a good job, or they will never hire another woman." CC Pilots constantly subjected Morrison to demeaning and disparate treatment. CC Pilots excluded Morrison from professional meetings and conversations.

13. Morrison was also treated differently at company social events. For example, in January 2018, CC Pilots held a "Bigfoot Tow Out." The male mariners were invited to bring their families to witness this event, but Morrison was not invited nor was her family that was visiting. In April of 2018, CC Pilots did not allow Morrison to take her significant other (also a mariner) to the Industry Outreach Night even though the other mariners could take their respective significant others.

14. After Morrison entered the training program, she learned that CC Pilots had made changes to her training program that no male trainee had previously been subjected to. CC Pilots required Morrison to have eighteen "evaluation rides" where certified pilots would monitor and evaluate her conduct as a trainee. Despite this new requirement, Morrison received positive

reviews for each ride. Her male counterparts were not required to perform similar "evaluation rides."

15. As part of her training, CC Pilots assigned Morrison a "Master Pilot" named Captain Louis Adams. Captain Adams was responsible for monitoring Morrison's assignments and had the sole authority to determine which jobs she was capable of performing. However, other pilots, repeatedly took jobs away from Morrison without notifying her or Adams based on their biased opinion. No other male mariner was subjected to similar treatment.

16. Adams was aware of the discrimination that Morrison experienced throughout her training. Adams told Morrison that she was treated differently than other trainees and pilots because of her gender. They had several conversations about the gender discrimination she faced.

17. CC Pilots also held Morrison to more stringent standards than her male counterparts. Her training was highly scrutinized in comparison to the male trainees and pilots. Her work hours were criticized even though she worked the same number of hours or more than her male counterparts. On occasion, Morrison was instructed to manipulate her work hours to stay "under 13/24" (mariners are not allowed to work more than 13 hours in a 24-hour period). However, Morrison was also falsely accused of doctoring her hours to benefit herself by allegedly "working less" than other pilots.

18. On April 17, 2018, Morrison told Adams her fears that the discrimination and hostile treatment was worsening. Initially, Adams believed that he could protect Morrison against the hostile treatment. Later that day, however, Adams called Morrison and warned her that she was "being ambushed" and might be fired without cause.

19. The next day, CC Pilots held a "special" meeting to allegedly discuss Morrison's performance. CC Pilots gave her a list of alleged events that they claimed constituted "near

misses." At the meeting, CC Pilots asked Morrison questions for the first time about situations that had occurred months earlier. CC pilots required Morrison to have "evaluation rides" where certified pilots would monitor and evaluate her conduct as a trainee. Despite this new requirement; Morrison received positive reviews for each of the 18 rides. Her male counterparts were not required to perform similar "evaluation rides".

20. The meeting was not part of CC Pilot's official procedures on how to address alleged mariner deficiencies. To Morrison, the meeting appeared designed to create the illusion of performance issues, when none existed. CC Pilots told Morrison that she would be sent to ship-handling school in Covington, Louisiana. Adams told Morrison that the claims raised in the meeting were false, and that she was being singled out and discriminated against because of her gender.

21. Despite the wrongful motivation behind CC Pilot's order to attend ship-handling school, the school instructors complimented Morrison on her pilot instincts and performance.

22. In June 2018, Adams unexpectedly died after a tragic accident. Morrison was not allowed to take any time off to grieve. CC Pilots continued to assign Morrison jobs and dispatched her on the very ship where Adams's accident occurred; on more than one occasion. On the morning of Adams's burial, CC Pilots assigned Morrison to a job. When Morrison informed dispatch that she needed to attend Adams's funeral as a pallbearer, concerned about what to do she contacted a fellow pilot for advice and they told her to "suck it up" and that "the show must go on." Morrison attended the funeral, and was dispatched to another job immediately afterwards.

23. When mariner incidents occur on a vessel, Corpus Christi Pilot Review Board performs an initial review. If there is concern surrounding the incident; they will decide whether or not to put the pilot on a two week suspension; pending investigation. This never occurred and

was not initiated by the Pilot Review Board after any incident.

24. Morrison had routine and standard incidents on September 18, 2018 and on December 2, 2018. Morrison was found free of fault in both incidents, and neither incident warranted an investigation of Morrison's involvement by the United States Coast Guard.

25. During her employment, CC Pilots subjected Morrison to lewd comments, inappropriate behavior, and images that were sexual in nature. In one instance, while on a two-pilot job in the spring of 2019, Bobby Grumbles showed Morrison a pornographic photo. The picture was titled "two does, one buck." It depicted a buck and two naked women bent over with their genitalia fully exposed. Grumbles showed Morrison the photo while she was navigating a 45-foot deep draft vessel. Morrison was extremely offended, surprised, and appalled. On another occasion, Grumbles cornered Morrison on a pilot boat, where he aggressively insinuated that Morrison "owed" Grumbles because he had stood up for her at the pilot review board; of which he was a member. When she complained, on three separate occasions to several different pilots; she was told "that's just how he is."

26. CC Pilots fostered a work environment that was hostile towards females. Morrison was constantly treated as if she was not wanted. She was deliberately put in situations that were unsafe and set up to fail. She voiced her concerns to no avail. When Morrison began her employment, she was told "I can't believe we hired a woman, the only thing that would have looked better would have been hiring a black woman, but we all know that will never happen." During her employment she was told: "You know there are guys on the other watch who'd prefer you not be here, and that's why you're on this watch… but if you buddy fuck us we can make it miserable for you over here too"; "You're lucky they hired you with all this sexual harassment nonsense going on"; "We got a female cadet and having you as a pilot was the catalyst"; and "I

know she's your friend and she's trying to help you out with all that, and y'all got that female thing going on."

27. Morrison was supposed to complete her training in July 2019. However, she was the first person to be told that her program would be extended by four months. In August 2019 Morrison began to ask about the date of her full commission and for information regarding the buy-in to become an official pilot with the CC Pilots post-training program. She was never given a clear answer.

28. On September 4, 2019, Captain Edward Gaynor, US Coast Guard and Captain of the Port of Corpus Christi, wrote a letter regarding an alleged "trend" with Morrison. The letter referenced three separate incidents, all of which found Morrison was free of fault and warranted no formal investigation. This letter was unprecedented, unwarranted, unfounded, ambiguous and accusatory. In contrast, male mariners who committed infractions that warranted formal investigation did not have similar letters written about them. Similarly situated male mariners were given the opportunity to respond to and defend any allegations. It is typical in any marine incident to formally investigate the incident prior to assigning cause or fault. It is highly irregular and unprofessional to do so in any manner prior to conclusion of an investigation; of which there were none. Captain Gaynor did not contact or interview Morrison, and never provided her with a copy of the letter about her.

29. On September 9, 2019, CC Pilots asked Morrison to resign. When she refused, CC Pilots threatened her career and said that they would "drag her name through the mud."

30. On September 10, 2019, CC Pilots cut all of Morrison's access to her emails and her work list.

31. On September 13, 2019, Morrison received a letter from CC Pilots that they were suspending her training. This constituted a constructive discharge. Morrison had always received accolades and high praise from those who witnessed her navigation skills. Her termination was unwarranted, unfounded and a pretext for gender discrimination.

32. The Port of Corpus Christi Pilot Advisory Panel has the sole authority to investigate complaints against pilots. However, the panel did not follow its own procedures in handling the allegations against Morrison. There was no investigation conducted, and she was never given an opportunity to respond to the allegations against her. Morrison never received an explanation for her termination.

## LEGAL CAUSES OF ACTION

## COUNT I

### Gender Discrimination and Retaliation Under Title VII, Section 1981, and the Texas Commission on Human Rights Act

***(i) Gender/Discrimination-Disparate Treatment***

33. Plaintiff incorporates by reference all the allegations set forth in above paragraphs.

34. Captain Morrison is a member of a class protected under Title VII, 42 U.S.C. § 1981, and the Texas Commission on Human Rights Act (the "TCHRA") (TEX. LAB. CODE § 21.051) based on her gender, female.

35. CC Pilots discriminated against Morrison in violation of Title VII, the TCHRA, and 42 U.S.C. § 1983 by treating her differently and less favorably than her non-female co-workers. More specifically, Morrison was scrutinized more, held to more stringent standards, received less support, less discretion, and was subject to more restrictions and higher performance expectations than her colleagues. Although Morrison reported the discriminatory treatment to her supervisors and CC Pilots' management was aware of the hostile environment, CC Pilots did

nothing to remedy the situation.

***(ii) Hostile Work Environment***

36. The allegations contained in all of the paragraphs of this Complaint are hereby re-averred and re-alleged for all purposes and incorporated herein with the same force and effect as if set forth verbatim.

37. CC Pilots promoted and fostered an environment that was hostile to women. Morrison was constantly ostracized and subjected to lewd and/or offensive comments and behaviors.

***(iii) Retaliation***

38. The allegations contained in all of the paragraphs of this Complaint are hereby re-averred and re-alleged for all purposes and incorporated herein with the same force and effect as if set forth verbatim.

39. Morrison reported discriminatory practices to Adams, her Master Pilot, on several occasions and to CC Pilots' management. Despite Morrison's reports, CC Pilots took no action to remedy the discrimination. After reporting the discrimination, Morrison was treated even more poorly and less favorably than her colleagues and was ultimately fired under false pretenses.

***(iv) Damages***

40. The allegations contained in all of the paragraphs of this Complaint are hereby re-averred and re-alleged for all purposes and incorporated herein with the same force and effect as if set forth verbatim.

41. As a direct and proximate result of CC Pilots' conduct as set forth herein, Morrison has suffered actual and compensatory damages, including, but not limited to, lost wages, loss of benefits and loss of enjoyment of life, and emotional pain, suffering, inconvenience, and mental

anguish, in an amount within the jurisdictional limits of this Court.

42. Morrison will further show that CC Pilots' conduct as alleged herein was intentional and CC Pilots acted with malice and/or reckless indifference entitling Morrison to compensatory and punitive damages as allowed by Title VII, the TCHRA, and/or 42 U.S.C. § 1983.

**COUNT II**

**Violations of 42 USC § 1983**

43. The allegations contained in all of the paragraphs of this Complaint are hereby re-averred and re-alleged for all purposes and incorporated herein with the same force and effect as if set forth verbatim.

44. Under the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution, Morrison has a right to be free from gender discrimination and retaliation in her employment with CC Pilots. CC Pilots, under the color of state law, in violation of 42 U.S.C. § 1983, purposefully deprived Morrison of clearly established federal statutory and constitutional rights by subjecting her to intentional and unlawful discriminatory practices based upon her gender in the application of policies regarding placement of job, job considerations, pay, demotions, the handling of complaints, and other terms, conditions, and privileges of Plaintiff's employment. These actions were continuing in nature.

45. Under the Due Process Clause of the Fourteenth Amendment of the United States Constitution, Morrison has a right to procedural due process before being terminated. CC Pilots had an obligation to ensure lawful and fair procedure before taking adverse action against Morrison. CC Pilots failed to follow any procedural due process in the termination of Morrison's employment.

46. CC Pilots acted in concert with each other in these illegal employment decisions towards Plaintiff in violation of 42 U.S.C. § 1983. CC Pilots' actions against Morrison constitute a violation of adopted policies. Such actions taken by CC pilots in illegally depriving Morrison of employment opportunities, salary and other benefits are contrary to law and without jurisdiction or authority under any provision of state or federal law.

47. CC Pilots are and/or were the official policymakers for CC Pilots. CC Pilots had the authority to hire, determine pay and job placement, promote, reclassify, and discipline employees. All of the decisions and actions of CC Pilots were approved and acquiesced by CC Pilots because Morrison exhausted the internal procedural requirements of CC Pilots.

48. Morrison is a member of a class protected under 42 U.S.C. § 1983 based on her gender, female. She was treated differently and less favorable than male employees. Male employees are given better opportunities and treated better.

49. Defendants have a pattern and practice of treating female employees less favorably than males. Defendants' actions are an official custom or policy of CC Pilots, Port of Corpus Christi Pilot Advisory Panel. CC Pilots' discriminatory practices have a negative and disparate impact on females and violate the Fourteenth Amendment.

50. As a result of CC Pilots' actions, Morrison has suffered, and will continue to suffer, damages in that she has lost salary and pay to which she was entitled, has suffered personal and professional ostracism, has been injured in her personal and professional reputation, has suffered damage to career opportunities, and has had to seek legal counsel.

51. Due to the violations of 42 U.S.C. § 1983, Plaintiff is entitled to recover her reasonable attorney's fees pursuant to 42 U.S.C. § 1988.

52. As a further result of Defendants' actions, Morrison has also suffered non-

pecuniary losses, including but not limited to emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life. Morrison is therefore entitled to compensatory damages.

53. Defendants' actions were done with malice and/or with reckless indifference to Morrison's federal and state-protected rights. Morrison is therefore entitled to punitive damages, for which she hereby sues.

54. Through the above described actions of CC Pilots, Morrison has been deprived of her rights pursuant to the Fourteenth Amendment of the United States Constitution, the Equal Protection Clause, and the Civil Rights Act, 42 U.S.C. §§ 1983, and has been damaged as set out above.

**JURY DEMAND**

55. Morrison demands that this Court empanel a lawful jury to hear this case.

**PRAYER**

Plaintiff Andrea Morrison prays that CC Pilots be cited to appear and answer herein and that upon final hearing, Morrison shall have and recover from CC Pilots as follows:

a. Actual damages within the jurisdictional limits of the Court;

b. Back pay and front pay within the jurisdictional limits of the Court;

c. Compensation for loss of employee benefits, including medical, dental, life, 401(k), pension, and retirement benefits;

d. Compensatory damages for past and future pecuniary losses, emotional pain, suffering, and inconvenience;

e. Punitive damages;

f. Liquidated damages;

g. Pre- and post-judgment interest at the highest rates allowed by law;

h. All reasonable and necessary attorneys' fees as specified herein;

i. All costs of court; and

j. Such other and further relief, at law or in equity, to which Plaintiff is justly entitled.

Respectfully submitted,

CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP

/s/ *Eric J. Cassidy*

Eric J. Cassidy
Texas Bar No. 24031807
Southern District Texas No. 30001
2 Houston Center
909 Fannin Street, Suite 3800
Houston, Texas 77010
ecassidy@gcfirm.com
P: (713) 331-6778
F: (713) 759-0712

**ATTORNEYS FOR PLAINTIFF**