UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| ANDREA MORRISON, § § Plaintiff, § § v. § § Civil Action No. 2:20cv299 ARANSAS-CORPUS CHRISTI § PILOTS, PORT OF CORPUS CHRISTI § PILOT BOARD, § § Defendants. § | |

## THIRD AMENDED COMPLAINT

Plaintiff Andrea Morrison files her Third Complaint against Aransas-Corpus Christi Pilots ("Defendant" or "CC Pilots") and the Board of Pilot Commissioners of the Port of Corpus Christi Authority, also known as the Port of Corpus Christi Pilot Board (the "Pilot Board"). Plaintiff asserts claims against Aransas-Corpus Christi Pilot Board for gender discrimination, retaliation, and violations of 42 USC 1983, Title VII, and the Texas Commission on Human Rights Act. Plaintiff asserts claims against the Port of Corpus Christi Pilot Board for violations of 42 USC 1983.

### INTRODUCTION

1. Captain Andrea Morrison is one of only a few female mariners in the shipping industry. In 2017, she was hired by CC Pilots and the Pilot Board to participate in a pilot training program to obtain a highly coveted pilot's license.

2. Despite the fact that Morrison was an excellent mariner and days away from obtaining full pilot commission, CC Pilots did not allow her to complete her training, constructively discharging her without cause or due process.

3. During her training with CC Pilots, CC Pilots discriminated against Morrison on the basis of her gender and subjected her to a hostile work environment. CC Pilots held Morrison to a different standard and treated her differently than the male mariners. Plaintiff, Captain Andrea Morrison, now files suit to protect her rights under the law.

## PARTIES

4. Plaintiff Andrea Morrison is an individual who resides in Houston, Harris County, Texas. She may be contacted through her attorney of record, Eric J. Cassidy.

5. Defendant Aransas-Corpus Christi Pilots is a governmental entity and may be served via its agent for service of process at Port of Corpus Christi Authority, 222 Power Street, Corpus Christi, Texas 78401.

6. Defendant Board of Pilot Commissioners of the Port of Corpus Christi Authority, also known as Port of Corpus Christi Pilot Board is a governmental entity and may be served with process by serving its chairman, Charles Zahn, at Port of Corpus Christi Authority, 222 Power Street, Corpus Christi, Texas 78401.

## JURISDICTION

7. The Court has federal question jurisdiction pursuant to 28 U.S.C. §§ 1332 and 1343 because the claims arise under Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. §§ 2000e *et seq.*) and 42 U.S.C. § 1983.

8. CC Pilots and the Pilot Board were, at all relevant times, Plaintiff's employer in Corpus Christi, Nueces County, Texas and engaged in an industry or enterprise affecting interstate commerce.

## VENUE

9. Venue of this action is governed by 42 U.S.C. §2000e-5(f)(3) and is proper in the Southern District of Texas because Plaintiff was discriminated against by CC Pilots and Pilot Board in Corpus Christi, Texas, and the incidents giving rise to this lawsuit occurred in Corpus Christi, Texas.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

10. On January 28, 2020, Morrison timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and Texas Workforce Commission ("TWC") – Civil Rights Division. The EEOC issued its "Notice of Rights to Sue" (the "Notice"), which was dated August 27, 2020. Plaintiff Morrison received the EEOC right to sue letter on September 18, 2020. It has been less than 90 days since Morrison received the Notice and more than 180 days since she filed the Charges with the TWC – Civil Rights Division.

## FACTUAL BACKGROUND

11. Morrison is a female mariner who worked diligently to ascend in a male-dominated industry. Morrison is one of the few women in the mariner industry to have obtained a captain rank. Even fewer women have had an opportunity to obtain a "pilot" license, the highest rank for a mariner.

12. In 2017, Morrison was hired by CC Pilots and the Pilot Board and admitted into a pilot training program. Morrison signed a document titled "Pre-Articles of Agreement." That document stated that she was appointed as a Deputy Pilot for CC Pilots and the Pilot Board. The document further stated that CC Pilots and the Pilot Board "jointly have the right, power and authority to appoint, suspend, or dismiss [Morrison] from office and to examine and determine my qualifications to serve as a Deputy Pilot." As such, Morrison was appointed by, and an employee

of, the Pilot Board.

13. From the beginning of her training, Morrison was ostracized and treated differently by the male CC Pilots members. Morrison was the first female admitted into the pilot training program and was told from the onset that "[she] better do a good job, or they will never hire another woman." CC Pilots constantly subjected Morrison to demeaning and disparate treatment. CC Pilots excluded Morrison from professional meetings and conversations.

14. Morrison was also treated differently at company social events. For example, in January 2018, CC Pilots held a "Bigfoot Tow Out." The male mariners were invited to bring their families to witness this event, but Morrison was not invited nor was her family that was visiting. In April of 2018, CC Pilots did not allow Morrison to take her significant other (also a mariner) to the Industry Outreach Night even though the other mariners could take their respective significant others.

15. After Morrison entered the training program, she learned that CC Pilots had made changes to her training program that no male trainee had previously been subjected to. CC Pilots required Morrison to have eighteen "evaluation rides" where certified pilots would monitor and evaluate her conduct as a trainee. Despite this new requirement, Morrison received positive reviews for each ride. Her male counterparts were not required to perform similar "evaluation rides."

16. As part of her training, CC Pilots assigned Morrison a "Master Pilot" named Captain Louis Adams. Captain Adams was responsible for monitoring Morrison's assignments and had the sole authority to determine which jobs she was capable of performing. However, other pilots, repeatedly took jobs away from Morrison without notifying her or Adams based on their biased opinion. No other male mariner was subjected to similar treatment.

17. Adams was aware of the discrimination that Morrison experienced throughout her training. Adams told Morrison that she was treated differently than other trainees and pilots because of her gender. Adams and Morrison had several conversations about the gender discrimination she faced.

18. For example, during her employment, CC Pilots subjected Morrison to lewd comments, inappropriate behavior, and images that were sexual in nature. In one instance, while on a two-pilot job in the spring of 2019, Bobby Grumbles showed Morrison a pornographic photo. The picture was titled "two does, one buck." It depicted a buck and two naked women bent over with their genitalia fully exposed. Grumbles showed Morrison the photo while she was navigating a 45-foot deep draft vessel. Morrison was extremely offended, surprised, and appalled. On another occasion, Grumbles cornered Morrison on a pilot boat, where he aggressively insinuated that Morrison "owed" Grumbles because he had stood up for her at the pilot review board; of which he was a member. When she complained, on three separate occasions to several different pilots; she was told "that's just how he is."

19. Adams and Morrison also agreed that CC Pilots fostered a work environment that was hostile towards females. Morrison was constantly treated as if she was not wanted. She was deliberately put in situations that were unsafe and set up to fail. She voiced her concerns to no avail. When Morrison began her employment with CC Pilots and the Pilot Board, she was told "I can't believe we hired a woman, the only thing that would have looked better would have been hiring a black woman, but we all know that will never happen." During her employment she was told: "You know there are guys on the other watch who'd prefer you not be here, and that's why you're on this watch… but if you buddy fuck us we can make it miserable for you over here too"; "You're lucky they hired you with all this sexual harassment nonsense going on"; "We got a female

cadet and having you as a pilot was the catalyst"; and "I know she's your friend and she's trying to help you out with all that, and y'all got that female thing going on."

20. CC Pilots also held Morrison to more stringent standards than her male counterparts. Her training was highly scrutinized in comparison to the male trainees and pilots. Her work hours were criticized even though she worked the same number of hours or more than her male counterparts. On occasion, Morrison was instructed to manipulate her work hours to stay "under 13/24" (mariners are not allowed to work more than 13 hours in a 24-hour period). However, Morrison was also falsely accused of doctoring her hours to benefit herself by allegedly "working less" than other pilots.

21. On April 17, 2018, Morrison told Adams her fears that the discrimination and hostile treatment was worsening. Initially, Adams believed that he could protect Morrison against the hostile treatment. Later that day, however, Adams called Morrison and warned her that she was "being ambushed" and might be fired without cause.

22. The next day, CC Pilots held a "special" meeting to allegedly discuss Morrison's performance. CC Pilots gave her a list of alleged events that they claimed constituted "near misses." At the meeting, CC Pilots asked Morrison questions for the first time about situations that had occurred months earlier. CC pilots required Morrison to have "evaluation rides" where certified pilots would monitor and evaluate her conduct as a trainee. Despite this new requirement; Morrison received positive reviews for each of the 18 rides. Her male counterparts were not required to perform similar "evaluation rides".

23. The meeting was not part of CC Pilot's official procedures on how to address alleged mariner deficiencies. To Morrison, the meeting appeared designed to create the illusion of performance issues, when none existed. CC Pilots told Morrison that she would be sent to ship-

handling school in Covington, Louisiana. Adams told Morrison that the claims raised in the meeting were false, and that she was being singled out and discriminated against because of her gender.

24. Despite the wrongful motivation behind CC Pilot's order to attend ship-handling school, the school instructors complimented Morrison on her pilot instincts and performance.

25. In June 2018, Adams unexpectedly died after a tragic accident. Morrison was not allowed to take any time off to grieve. CC Pilots continued to assign Morrison jobs and dispatched her on the very ship where Adams's accident occurred; on more than one occasion. On the morning of Adams's burial, CC Pilots assigned Morrison to a job. When Morrison informed dispatch that she needed to attend Adams's funeral as a pallbearer, concerned about what to do she contacted a fellow pilot for advice and they told her to "suck it up" and that "the show must go on." Morrison attended the funeral, and was dispatched to another job immediately afterwards.

26. After Adam's death, Morrison experienced two routine and standard sea events on September 18, 2018 and on December 2, 2018. Morrison was found free of fault in both instances, and neither event warranted an investigation by the United States Coast Guard.[1] Morrison was not subjected to a suspension of any kind. Both matters were closed and there was no finding of pilot error or a breach of safety protocols.

27. Morrison was supposed to complete her training in July 2019. However, she was told that her program would be extended by four months—an extension that no male pilot was ever subjected to. In August 2019 Morrison began to ask about the date of her full commission

---

[1] When mariner incidents occur on a vessel, Corpus Christi Pilot Review Board performs an initial review. If there is concern surrounding the incident, they will decide whether or not to put the pilot on a two week suspension, pending an investigation.

and for information regarding the buy-in to become an official pilot with the CC Pilots post-training program. She was never given a clear answer.

28. On September 4, 2019, Captain Edward Gaynor, US Coast Guard and Captain of the Port of Corpus Christi, wrote a letter regarding the two events from September 18, 2018 and on December 2, 2018. The letter referenced a third event, which was so minor it was not even reviewed by the Board. In each of the three events, Morrison was found to be free from fault. Nevertheless, the letter contended that there was an alleged pattern of safety issues.

29. On information and belief, the Coast Guard letter was written as a pretext, on behalf of the CC Pilots, to provide a basis to terminate Morrison.

30. This Coast Guard letter was unprecedented, unwarranted, unfounded, ambiguous and accusatory. In contrast, male mariners who committed similar or worse infractions that warranted formal investigation never received similar letters. Similarly situated male mariners were given the opportunity to respond to and defend similar allegations. It is typical in any marine incident to formally investigate the incident prior to assigning cause or fault. Captain Gaynor did not contact or interview Morrison, and never provided her with a copy of the letter.

31. On September 9, 2019, CC Pilots, citing the letter, asked Morrison to resign. When she refused, CC Pilots threatened her career and said that they would "drag her name through the mud."

32. On September 10, 2019, CC Pilots cut all of Morrison's access to her emails and her work list.

33. On September 13, 2019, Morrison received a letter from CC Pilots that they were suspending her training. This constituted a constructive discharge. Morrison had always received

accolades and high praise from those who witnessed her navigation skills. Her termination was unwarranted, unfounded and a pretext for gender discrimination.

34. The Pilot Board is an oversight board with a duty to investigate complaints against pilots. However, the panel did not follow its own procedures in handling the allegations against Morrison and took no action to determine what occurred when the CC Pilots wrongfully terminated her. The Pilot Board did not conduct an investigation into the CC Pilots' claims, and therefore abrogated their duty as an oversight body responsible for ensuring the Aransas-Corpus Christi Pilots' compliance with law. Far from being an "advisory board," the Pilot Board has exclusive jurisdiction over the CC Pilots. The Pilot Board by its own terms "hears and decides complaints related to pilot conduct."[2] Because the Pilot Board did not perform its duties and did not hear or decide the alleged complaints against Plaintiff, Captain Morrison was never given an opportunity to respond to the allegations against her and show that the claims were baseless. As a result, Captain Morrison was wrongly discharged without due process or equal protection.

## LEGAL CAUSES OF ACTION

## COUNT I

**Gender Discrimination and Retaliation Under Title VII, Section 1981, and the Texas Commission on Human Rights Act**

*(i)  Gender/Discrimination-Disparate Treatment*

35. Plaintiff incorporates by reference all the allegations set forth in above paragraphs.

36. Captain Morrison is a member of a class protected under Title VII, 42 U.S.C. § 1981, and the Texas Commission on Human Rights Act (the "TCHRA") (TEX. LAB. CODE § 21.051) based on her gender (female).

---

[2] https://corpuschristipilotboard.com (July 1, 2021).

37. CC Pilots discriminated against Morrison in violation of Title VII, the TCHRA, and 42 U.S.C. § 1983, by treating her differently and less favorably than her non-female co-workers. Morrison was appointed by, and an employee of, the Pilot Board. More specifically, Morrison was scrutinized more by CC Pilots, held to more stringent standards, received less support, less discretion, and was subject to more restrictions and higher performance expectations than her male colleagues. Although Morrison reported the discriminatory treatment to her supervisors and CC Pilots' management was aware of the hostile environment, CC Pilots and the Pilot Board did nothing to remedy the situation.

### *(ii)    Hostile Work Environment*

38. The allegations contained in all of the paragraphs of this Complaint are hereby re-averred and re-alleged for all purposes and incorporated herein with the same force and effect as if set forth verbatim.

39. CC Pilots promoted and fostered an environment that was hostile to women. Morrison was constantly ostracized and subjected to lewd and/or offensive comments and behaviors.

### *(iii)   Retaliation*

40. The allegations contained in all of the paragraphs of this Complaint are hereby re-averred and re-alleged for all purposes and incorporated herein with the same force and effect as if set forth verbatim.

41. Morrison reported discriminatory practices to Adams, her Master Pilot, on several occasions and to CC Pilots' management. Despite Morrison's reports, CC Pilots and the Pilot Board took no action to remedy the discrimination. After reporting the discrimination, Morrison was treated even more poorly and less favorably than her colleagues and was ultimately fired under

false pretenses.

### *(iv)* *Damages*

42. The allegations contained in all of the paragraphs of this Complaint are hereby re-averred and re-alleged for all purposes and incorporated herein with the same force and effect as if set forth verbatim.

43. As a direct and proximate result of CC Pilots' and the Pilot Board's conduct as set forth herein, Morrison has suffered actual and compensatory damages, including, but not limited to, lost wages, loss of benefits and loss of enjoyment of life, and emotional pain, suffering, inconvenience, and mental anguish, in an amount within the jurisdictional limits of this Court.

44. Morrison will further show that CC Pilots' conduct as alleged herein was intentional and CC Pilots acted with malice and/or reckless indifference entitling Morrison to compensatory and punitive damages from CC Pilots as allowed by Title VII, the TCHRA, and/or 42 U.S.C. § 1983.

## COUNT II

## Violations of 42 USC § 1983

45. The allegations contained in all of the paragraphs of this Complaint are hereby re-averred and re-alleged for all purposes and incorporated herein with the same force and effect as if set forth verbatim.

46. Under the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution, Morrison has a right to be free from gender discrimination and retaliation in her employment with the Pilot Board and CC Pilots. Defendants, under the color of state law, in violation of 42 U.S.C. § 1983, purposefully deprived Morrison of clearly established federal statutory and constitutional rights by subjecting her to intentional and unlawful discriminatory

practices based upon her gender in the application of policies regarding placement of job, job considerations, pay, demotions, the handling of complaints, and other terms, conditions, and privileges of Plaintiff's employment. These actions were continuing in nature.

47. Morrison has a protected liberty interest in the pilot program that entitled her to procedural due process, including the right of contract and to engage in any common occupations of life. Because Captain Morrison's "good name, reputation, honor, or integrity is at stake," she is entitled to the minimal requirements of due process.

48. Moreover, the Pilot Board has provided oversight to the CC Pilots regarding hiring, disciplinary actions, and termination of similarly situated males in who are pilots. The Pilot Board has reviewed appointments, hiring, events or incidents related to male pilots and deputy pilots. By not exercising its duties as an oversight and as the employer of Morrison in his instance, and treating her differently than male pilots and deputy pilots, the Pilot Board deprived Morrison of equal protection under the law.

49. Under the Due Process Clause of the Fourteenth Amendment of the United States Constitution, Morrison has a right to procedural due process before being terminated. CC Pilots and the Pilot Board had an obligation to ensure lawful and fair procedure before taking adverse action against Morrison. CC Pilots and the Pilot Board failed to follow any procedural due process in the termination of Morrison's employment.

50. CC Pilots and the Pilot Board acted in concert with each other in these illegal employment decisions towards Plaintiff in violation of 42 U.S.C. § 1983. CC Pilots' and the Pilot Board's actions against Morrison constitute a violation of adopted policies. Such actions taken by CC pilots and the Pilot Board in illegally depriving Morrison of employment opportunities, salary and other benefits are contrary to law and without jurisdiction or authority under any

provision of state or federal law.

51. CC Pilots and the Pilot Board are and/or were the official policymakers for CC Pilots. CC Pilots and the Pilot Board had the authority to hire, determine pay and job placement, promote, reclassify, and discipline employees. All of the decisions and actions of CC Pilots were approved and acquiesced by the Pilot Board because Morrison exhausted the internal procedural requirements of CC Pilots.

52. Morrison is a member of a class protected under 42 U.S.C. §1983 based on her gender (female). She was treated differently and less favorably by CC Pilots and the Pilot Board than male employees. Male employees were given better opportunities for advancement and evaluated under less rigid standards.

53. Defendants have a pattern and practice of treating female employees less favorably than males. Defendants' actions are an official custom or policy of CC Pilots and the Pilot Board. CC Pilots' and the Pilot Board's discriminatory practices have a negative and disparate impact on females and violate the Fourteenth Amendment.

54. As a result of CC Pilots' and the Pilot Board's actions, Morrison has suffered, and will continue to suffer, damages in that she has lost salary and pay to which she was entitled, has suffered personal and professional ostracism, has been injured in her personal and professional reputation, has suffered damage to career opportunities, and has had to seek legal counsel.

55. Due to the violations of 42 U.S.C. § 1983, Plaintiff is entitled to recover her reasonable attorney's fees pursuant to 42 U.S.C. § 1988.

56. As a further result of Defendants' actions, Morrison has also suffered non-pecuniary losses, including but not limited to emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life. Morrison is therefore entitled to compensatory damages.

57. The CC Pilots' actions were done with malice and/or with reckless indifference to Morrison's federal and state-protected rights. Morrison is therefore entitled to punitive damages from the CC Pilots, for which she hereby sues.

58. Through the above described actions of CC Pilots and the Pilot Board, Morrison has been deprived of her rights pursuant to the Fourteenth Amendment of the United States Constitution, the Equal Protection Clause, and the Civil Rights Act, 42 U.S.C. §§ 1983, and has been damaged as set out above.

## JURY DEMAND

59. Morrison demands that this Court empanel a lawful jury to hear this case.

## PRAYER

Plaintiff Andrea Morrison prays that CC Pilots and the Pilot Board be cited to appear and answer herein and that upon final hearing, Morrison shall have and recover from CC Pilots and the Pilot Board as follows:

a. Actual damages within the jurisdictional limits of the Court;

b. Back pay and front pay within the jurisdictional limits of the Court;

c. Compensation for loss of employee benefits, including medical, dental, life, 401(k), pension, and retirement benefits;

d. Compensatory damages for past and future pecuniary losses, emotional pain, suffering, and inconvenience;

e. Punitive damages;

f. Liquidated damages;

g. Pre- and post-judgment interest at the highest rates allowed by law;

h. All reasonable and necessary attorneys' fees as specified herein;

i. All costs of court; and

j. Such other and further relief, at law or in equity, to which Plaintiff is justly entitled.

Respectfully submitted,

CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP

/s/ *Eric J. Cassidy*
Eric J. Cassidy
Texas Bar No. 24031807
Southern District Texas No. 30001
2 Houston Center
909 Fannin Street, Suite 3800
Houston, Texas 77010
ecassidy@gcfirm.com
Office: (713) 331-2456
Mobile: (713) 331-6778
Fax: (713) 759-0712

**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

I certify that on July 15, 2022, a copy of the Amended Complaint was served via electronic service to:

THE CREW LAW FIRM, P.C.
Paxton Crew
303 East Main Street
League City, Texas 77573
paxton@thecrewlawfirm.com

*Attorneys for Defendant Aransas-Corpus Christi Pilots*

MCKIBBEN, MARTINEZ, JARVIS & WOOD, L.L.P.
James McKibben
Liza Aguilar Wood
1100 Tower II
555 N. Carancahua, Ste. 110
Corpus Christi, Texas 78401
mckibben@mcv-law.com
laguilarwood@mmjw-law.com

*Attorneys for Defendant Port of Corpus Christi Pilot Board*

/s/ *Eric J. Cassidy*
Eric J. Cassidy