UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| ANDREA MORRISON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 2:20-CV-00299 |
| | § | |
| ARANSAS-CORPUS CHRISTI PILOTS, *et al.*, | § | |
| | § | |
| | § | |
| Defendants. | § | |

## ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENTF

Plaintiff Andrea Morrison filed this suit against Defendants Aransas-Corpus Christi Pilots ("ACCP") and Port of Corpus Christi Pilot Board ("the Pilot Board"). (D.E. 56). Against ACCP, Plaintiff asserts gender discrimination and retaliation claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and the Texas Commission on Human Rights Act ("TCHRA"), TEX. LAB. CODE § 21.051, and violations of 42 U.S.C. § 1983. (D.E. 56, p. 9–14). Plaintiff also alleges § 1983 violations against the Pilot Board. *Id.* at 11–14. The Court previously granted ACCP's motion for summary judgment on Plaintiff's Title VII and TCHRA claims. (D.E. 49). As such, only Plaintiff's § 1983 claims against ACCP and the Pilot Board remain. *See* (D.E. 56).

Now pending are ACCP's second motion for summary judgment, (D.E. 50), and the Pilot Board's motion for summary judgment, (D.E. 59). After reviewing the summary judgment record in the light most favorable to Plaintiff, the Court **GRANTS** ACCP's motion for summary judgment. (D.E. 50). The Court also **GRANTS** the Pilot Board's motion for summary judgment. (D.E. 59).

# I. Background

The Pilot Board was created pursuant to the Port of Corpus Christi Pilots Licensing and Regulatory Act ("Corpus Christi Act" or "Act"). TEX. TRANSP. CODE ANN. § 70.011. The Pilot Board consists of the "seven port commissioners for the Port of Corpus Christi Authority." *Id.* The Pilot Board has "exclusive jurisdiction over the piloting of vessels in the Port of Corpus Christi[.]" *Id.* § 70.015. The Pilot Board's duties include, among other things, determining the qualifications of each branch pilot; submitting those who have qualified for branch pilot appointment to the Texas governor; establishing pilotage rates; and instituting investigations to consider casualties, accidents, or other actions that violate the Corpus Christi Act. *Id.* § 70.017. The Pilot Board also establishes a Pilot Review Board which "hear[s] and review[s] complaints against pilots" and makes "recommendations to the board concerning the complaints." *Id.* § 70.018. "In all its duties . . . [the Pilot Board] may not sanction discriminatory practices nor discriminate against a pilot or pilot applicant because of race, religion, sex, ethnic origin, or national origin." *Id.* § 70.019.

ACCP is an unincorporated association of the commissioned branch pilots who service the Port of Corpus Christi. (D.E. 50, p. 2). ACCP makes equipment and vessels available to deputy pilots and branch pilots. *See* (D.E. 50-1, p. 1). ACCP has a deputy branch pilot training program that allows mariners to start piloting small ships and gradually increase to piloting the largest ships that call on the Port of Corpus Christi. (D.E. 50, p. 2). The "apex career" for a professional mariner is "a full branch pilot." *Id.* at 3. To qualify for a branch pilot license, a mariner must, among other things, "have at least two years' service as a deputy branch pilot under the supervision of a state-commissioned pilot serving the Port of Corpus Christi[.]" TEX. TRANSP. CODE ANN. § 70.032(4).

To become a deputy branch pilot, a mariner must first submit a deputy branch pilot application to ACCP. (D.E. 59, p. 3). An applicant that ACCP deems qualified is then placed in a

pool for ACCP to consider when a vacancy arises. *See id.* When a vacancy occurs, ACCP notifies the Pilot Board of the applicant it recommends for appointment to ACCP's deputy branch pilot training program. *Id.* The Pilot Board examines the applicant's qualifications and votes to approve the applicant's appointment to ACCP's training program. *Id.*; *see also* TEX. TRANSP. CODE ANN. § 70.037. ACCP created, administers, and controls the deputy branch pilot training program. (D.E. 59, p. 3); *see also* (D.E. 59-1, p. 3; 59-2, p. 1–7). The Pilot Board does not have authority over the deputy branch pilot training program in that the Pilot Board may not select which applicant ACCP will recommend, and the Pilot Board may not suspend or dismiss a mariner from the program once selected. (D.E. 59-1, p. 3).

To complete ACCP's training program, a mariner must go through three phases of training: (1) the observation phase; (2) the limited deputy phase; and (3) the unlimited deputy phase. (D.E. 59-2, p. 2). During the observation phase, the mariner observes or pilots vessels while accompanied by an active branch pilot. *Id.* After completing the observation phase, the mariner enters the limited deputy phase, which permits mariners to pilot certain vessels themselves. *Id.* at 4. When a mariner begins the limited deputy phase, ACCP notifies the Pilot Board and requests that the Pilot Board consider the date the mariner starts the limited deputy phase as the effective and anniversary date of the deputy branch pilot's certificate. (D.E. 59, p. 4). Basically, a mariner receives his or her deputy branch pilot certificate from the Pilot Board upon beginning the limited deputy phase of ACCP's training program. *See id.*; *see also* TEX. TRANSP. CODE ANN. § 70.034 (mariners must apply to the Pilot Board for a deputy branch pilot's certificate). The deputy branch pilot certificate authorizes a mariner to provide pilot services for the Port of Corpus Christi. TEX. TRANSP. CODE ANN. § 70.031. Regardless of whether a deputy branch pilot completes ACCP's deputy branch pilot training program, a "deputy branch pilot's certificate expires on the second

anniversary of the date it is issued[.]" *Id.* § 70.039. The Pilot Board may revoke or suspend a deputy branch pilot certificate. *Id.* § 70.043.

After completing the limited deputy phase, the mariner (now a deputy branch pilot) progresses to the unlimited deputy phase. *See* (D.E. 59-2, p. 4). After successfully completing the unlimited deputy phase, ACCP recommends to the Pilot Board that the mariner advance to branch pilot. (D.E. 59, p. 4; D.E. 59-1, p. 3). The mariner must apply, in writing, to the Pilot Board for a branch pilot license. TEX. TRANSP. CODE ANN. §§ 70.034–70.035. If the Pilot Board approves the application, it notifies the Texas governor that the mariner qualifies for a branch pilot appointment, and the governor "shall issue . . . a commission to serve as a branch pilot to and from the Port of Corpus Christi." *See id.* § 70.036.

In this case, the Pilot Board approved Plaintiff's appointment to ACCP's deputy branch pilot training program on April 18, 2017. (D.E. 59-1, p. 10). Plaintiff then began ACCP's training program and signed an ACCP document titled Pre-Articles of Agreement. *See* (D.E. 50, p. 2; D.E. 50-1). In December 2017, Plaintiff began the limited deputy phase. *See* (D.E. 50, p. 5–6). Her deputy branch pilot certificate from the Pilot Board took effect on December 16, 2017. (D.E. 59, p. 6).

In September 2019, United States Coast Guard Captain E.J. Gaynor, Captain of the Port of Corpus Christi, sent ACCP a letter outlining Plaintiff's involvement in two collisions, a near miss at the Port Aransas ferry landing involving Plaintiff, and her piloting performance. (D.E. 50-3, p. 1). Captain Gaynor recommended that ACCP review Plaintiff's performance to determine if action was necessary to prevent another incident. *Id.* ACCP subsequently determined it was unsafe to continue dispatching Plaintiff to vessels and suspended Plaintiff from the deputy branch pilot training program. (D.E. 50, p. 3–4); *see also* (D.E. 59-1, p. 24). ACCP did not dispatch Plaintiff to

another vessel, and her deputy branch pilot certificate expired by operation of law in December 2019. (D.E. 59, p. 8); *see also* TEX. TRANSP. CODE ANN. § 70.039(b). Plaintiff did not apply for a branch pilot license. (D.E. 50-5, p. 3).

Upon her suspension, Plaintiff emailed the Pilot Board's secretary and provided him with: (1) a letter from Plaintiff to U.S. Coast Guard Rear Admiral Nadeau requesting that Captain Gaynor's letter be rescinded; (2) a letter from Plaintiff to ACCP's presiding officer, Captain Monaco, regarding her suspension; (3) Captain Gaynor's letter to ACCP; and (4) ACCP's letter to Plaintiff detailing her suspension. (D.E. 59, p. 8; D.E. 60-5). Plaintiff's letter to Captain Monaco stated that she faced "threats and harassment by fellow pilots to the point where it [could] reasonably be deemed a hostile work environment." (D.E. 60-5, p. 3). In December 2020, Plaintiff filed this suit against ACCP and the Pilot Board alleging that she was subject to discrimination based on her gender. (D.E. 1; D.E. 56).

## II. Legal Standards

### A. Summary Judgment Standard

"Summary judgment is proper 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled·to judgment as a matter of law.'" *Terral River Serv., Inc. v. SCF Marine Inc.*, 20 F.4th 1015, 1017–18 (5th Cir. 2021) (quoting FED. R. CIV. P. 56(a)). The moving party bears the initial burden of informing the district court of the basis for its motion and identifying the portions of the record it believes shows the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets this requirement, "the burden shifts to the nonmoving party to show with 'significant probative evidence'" that a genuine issue of material fact exists. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (citing *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994)). The

nonmoving party "must identify specific evidence in the record and articulate how that evidence supports that party's claim." *Brush v. Wells Fargo Bank, N.A.*, 911 F. Supp. 2d 445, 457 (S.D. Tex. 2012) (Rosenthal, C.J.) (citing *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007)). A district court is not required to sift through the record to find evidence that supports a party's opposition to summary judgment. *Stults v. Conoco, Inc.*, 76 F.3d 651, 657 (5th Cir. 1996).

"A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Hamilton*, 232 F.3d at 477. "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Id.* The showing of a genuine issue is not satisfied by conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Factual controversies are resolved in favor of the nonmoving party; however, there must be an actual controversy—both parties must have submitted evidence of contradictory facts. *Id.* "[I]n the absence of any proof," the court does not "assume that the nonmoving party could or would prove the necessary facts." *Id.* (emphasis removed). If the record would not allow for "a rational trier of fact to find for the non-moving party, there is no genuine issue for trial[,]" and summary judgment must be granted. *See Brush*, 911 F. Supp. 2d at 457 (internal quotations omitted).

### B. 42 U.S.C. § 1983

Section 1983 imposes civil liability on any person acting under color of law who deprives another individual of "rights, privileges, or immunities secured by the Constitution and laws" of the United States. *See* 42 U.S.C. 1983; *Nelson v. Campbell*, 541 U.S. 637, 643 (2004). "To prevail on a section 1983 claim, the plaintiff must show that: 1) the offending conduct was committed by a person acting under color of state law; and 2) the conduct deprived the plaintiff of rights secured by the Constitution or federal law." *Bauer v. Texas*, 341 F.3d 352, 357 (5th Cir. 2003) (citing

*Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled in part on other grounds by Daniels v. Williams*, 474 U.S. 327, 330–31 (1986)).

### III. Preliminary Matter: Motion to Strike

The Pilot Board moves to strike Plaintiff's Second Declaration and Third Declaration, both of which are unsworn. (D.E. 61, p. 18) (referencing D.E. 60-7; D.E. 60-8). For an unsworn declaration to be properly considered summary judgment evidence, it must substantially comply, or conform, with the requirements of 28 U.S.C. § 1746. *See Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1306 (5th Cir. 1998). Section 1746 requires an unsworn declaration created within the United States to be in writing and executed in "substantially the following form: . . . 'I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)'." 28 U.S.C. § 1746(2).

The unsworn Declarations at issue include the following statement: "I, Andrea Morrison, under the penalty of perjury under the laws of the United States of America, state that the foregoing statements are true and correct." (D.E. 60-7, p. 3; D.E. 60-8, p. 2). Both Declarations contain execution dates, but as shown below, Plaintiff did not execute either document. *See* (D.E. 60-7, p. 3; D.E. 60-8, p. 3).

> 10. I, Andrea Morrison, under the penalty of perjury under the laws of the United States of America, state that the foregoing statements are true and correct.
>
> Executed on May 27, 2022.
>
> _____
> Andrea Morrison

(D.E. 60-7, p. 3).

Further, Declarant sayeth not.

Executed on July 29, 2022.

_____
Andrea Morrison

(D.E. 60-8, p. 3).

Section 1746's plain language requires the declarant's signature. 28 U.S.C. § 1746; *see also White v. Allstate Ins. Co.*, 513 F. Supp. 2d 674, 680 n.5 (E.D. La. 2007) (Engelhardt, J.) (finding that unsworn declaration lacking signature and date and additional unsworn declaration lacking date failed to comply with § 1746); *Quinones v. UnitedHealth Grp. Inc.*, 250 F. Supp. 3d 692, 697 n.7 (D. Haw. 2017) (Kobayashi, J.) ("An unsigned declaration violates . . . 28 U.S.C. § 1746[.]"); *Hatchett v. Shinseki*, 957 F. Supp. 2d 960, 965 n.2 (S.D. Ind. 2013) (Magnus-Stinson, J.) (declining to consider unsigned declaration under § 1746). As such, because Plaintiff's Declarations do not comport with § 1746's substantial compliance requirement, *see* 28 U.S.C. § 1746(2), the Court **GRANTS** the Pilot Board's motion to strike Plaintiff's Second Declaration, (D.E. 60-7), and Third Declaration, (D.E. 60-8). (D.E. 61, p. 18).

### IV. ACCP's Motion for Summary Judgment

ACCP argues that it is entitled to summary judgment for a variety of reasons, one of which being that ACCP is not a state actor. *See* (D.E. 50, p. 11–12). After review, the Court agrees that ACCP is not a state actor. Because ACCP is not a state actor and did not act under color of state law,[1] ACCP is entitled to summary judgment on Plaintiff's § 1983 claim, and the Court need not reach ACCP's additional arguments. *See Bauer*, 341 F.3d at 357.

---

[1] A § 1983 plaintiff alleging a deprivation of Fourteenth Amendment Due Process, as Plaintiff is in this case, "must show that state action caused his [or her] injury." *Bass v. Parkwood Hosp.*, 180 F.3d 234, 241 (5th Cir. 1999). "In such cases, the "under color of law" and state action inquiries merge into one." *Id.*

Generally, a private actor is not "acting under color of state law" and thus cannot be liable under § 1983, even if its conduct is discriminatory or wrongful. *See Richard v. Hoechst Celanese Chem. Grp., Inc.*, 355 F.3d 345, 352 (5th Cir. 2003); *see also Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (the purpose of § 1983 is "to deter *state actors* from using the badge of their authority to deprive individuals of their federally guaranteed rights[.]") (emphasis added). A private party only acts under color of state law, if its actions are "fairly attributable to the State." *Bass*, 180 F.3d at 241 (quoting *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 937 (1982)). A private actor's conduct may be attributed to the state when—among other circumstances—the private entity performs a function traditionally in the exclusive province of the state; the state exercises extreme coercive power over the private actor or provides such significant encouragement that the choice must be considered that of the state; the government has insinuated itself into a position of interdependence with the private party such that it is rendered a joint participant in the conduct, *see Bass*, 180 F.3d at 241–42, or the private party's conduct "is 'entwined with governmental policies,'" or the government is entwined in the management or control of the private party, *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 296 (2001) (quoting *Evans v. Newton*, 382 U.S. 296, 299 (1966)).

ACCP argues that it cannot be subject to liability under § 1983 because "ACCP is a private entity, not a state actor." (D.E. 50, p. 11). Plaintiff argues that ACCP is a state actor because "ACCP's nominally private character is [i]ntertwined with public institutions and public officials in its composition and workings, and there is no substantial reason to claim unfairness in applying constitutional standards to ACCP." (D.E. 57, p. 11). Plaintiff relies on *Brentwood Academy* to support her argument. *Id.* at 10–12. However, Plaintiff's reliance is misplaced.

In *Brentwood Academy*, the Supreme Court found that a state-wide, non-profit athletic association regulating interscholastic sports among Tennessee schools was a state actor. *Brentwood*, 531 U.S. at 290. The association was the only entity regulating interscholastic athletics, and 84% of the association's membership consisted "of public schools represented by their officials[.]" *Id.* at 291, 299–300. The association's voting membership was limited "to high school principals, assistant principals, and superintendents elected by the member schools[.]" *Id.* at 291. Half of the association's board or council meetings were held during school hours, and public schools "largely provided" the association's funding. *Id.* at 299. While the association's employees were not paid by the state, they could join the state's public retirement system available to state employees. *Id.* at 291. Because the state school officials were so entwined with the association's structure, the Supreme Court found that the association was a state actor, and thus a proper § 1983 defendant. *See id.* at 291, 305.

Plaintiff summarily concludes that the decision in *Brentwood Academy* "leads to the conclusion that ACCP is a state actor." (D.E. 57, p. 11). The Court disagrees. Unlike the association in *Brentwood Academy*, ACCP is not composed of state officials, and its "entwinement" with the government is limited at best. *Cf. Brentwood*, 531 U.S. at 291. ACCP is an unincorporated association of the branch pilots servicing the Port of Corpus Christi. (D.E. 50, p. 2). ACCP's members are individual branch pilots—not state employees. *See* (D.E. 50-2, p. 2). While each branch pilot is commissioned by the governor, TEX. TRANSP. CODE ANN. § 70.036(b), this is akin to licensing a pilot in a particular area—not a government designation of employment nor a government endorsement that would amount to state action. *See Moody ex rel U.S. v. MeGee*, 41 F.2d 515, 516 (5th Cir. 1930) ("A pilot's license is a certificate of competence, . . . [i]n piloting a vessel [a pilot] is not discharging any official duty. He is acting merely in a private capacity . . .

."); *Mobile Bar Pilots Ass'n v. Comm'r of Internal Revenue*, 97 F.2d 695, 697 (5th Cir. 1938) (The Pilots Association "does no business except as an agent of its individual members."); *Hous. Pilots v. Goodwin*, 178 S.W.2d 308, 311 (Tex. App.—Galveston 1944, writ dism'd) ("[T]he 'commission,' which licenses a pilot to practice pilotage as the branch pilot of a particular port, is merely a certificate of competence, and does not differ in character from certificates of competence required of lawyers or doctors before they are permitted to practice law or medicine."). "A private entity does not become a state actor because it holds a license granted by the state." *Marts v. Times Picayune Publ'g Co.*, No. 94-30505, 1995 WL 70879, at *1 (5th Cir. Jan. 24, 1995); *see also, e.g., Gipson v. Rosenberg*, 797 F.2d 224, 225 (5th Cir. 1986) (finding attorneys were not state actors merely because they held state bar licenses). Accordingly, unlike the association in *Brentwood Academy*, the composition of ACCP's membership does not render it a state actor. *Cf. Brentwood,* 531 U.S. at 291.

Plaintiff next asserts that the Corpus Christi Act renders the "issuance of pilot and deputy licenses . . . a function of [i]ntertwined public and private entities" including the Pilot Board, "the 'Pilot Review Board' which consists of two ACCP Pilots," and the Texas governor. (D.E. 57, p. 11). According to Plaintiff, this means that "ACCP is an association within the statutory scheme that is represented by its officials acting in their official capacity to provide piloting and training for deputy and branch pilots." *Id.* It appears Plaintiff is arguing that the Pilot Board is a state actor and ACCP's level of entwinement with the Pilot Board renders it a state actor. *See id.* However, even assuming that the Pilot Board is a state actor, ACCP and the Pilot Board's overlapping interests do not reach the level of entwinement necessary to render ACCP a state actor, *see Brentwood*, 531 U.S. at 296, nor has the Pilot Board insinuated itself into a position of interdependence with ACCP, *see Bass*, 180 F.3d at 242. While a mariner seeking a deputy branch

pilot certificate must be appointed by a branch pilot, the Corpus Christi Act does not require the branch pilot to be an ACCP member. *See* TEX. TRANSP. CODE ANN. § 70.033. While ACCP controls the deputy branch pilot training program, and the Pilot Board approves ACCP's appointment of the applicant to the training program, this does not reach the level of joint conduct that would make the entities interdependent. *Cf. Lugar*, 457 U.S. at 942 (finding private entity interdependent with state, and thus a state actor, when state statutory procedures allowed a private party to invoke the aid of state officials in attaching a debtor's property).

Moreover, ACCP's recommending to the Pilot Board that a mariner advance to branch pilot does not render it a state actor either because the recommendation process is akin to a private entity that administers a licensing exam and reports those scores to the state for licensing purposes. "Federal courts have consistently held that private entities administering examinations relied upon by the state do not qualify under any of the aforementioned tests as state actors for purposes of [s]ection 1983 claims . . . . This is true even when the test in question is required for state licensure." *Mattei v. Int'l Conf. of Funeral Serv. Examining Bds.*, No. 1-15-CV-139, 2015 WL 5125799, at *3 (W.D. Tex. Sep. 1, 2015) (Pitman, J.) (collecting cases). To receive a pilot's license, a mariner must still apply in writing to the Pilot Board, whether or not he or she is recommended by ACCP, and ACCP has no control over the results of the application. *See* TEX. TRANSP. CODE ANN. §§ 70.034, 70.035. The only entity capable of granting a deputy branch pilot certificate or pilot license is the Pilot Board. *See id.* §§ 70.031, 70.034. Likewise, the only entity capable of suspending or revoking a deputy branch pilot certificate or branch pilot license is the Pilot Board. *See id.* §§ 70.042, 70.043; *see also* (D.E. 58, p. 3) ("Only the Pilot Board can suspend or revoke a deputy certificate or branch pilot commission."). In short, the entities are separate.

Relatedly, because ACCP cannot grant or revoke deputy branch pilot certificates and pilot licenses, TEX. TRANSP. CODE ANN. §§ 70.042, 70.043, Plaintiff's argument that ACCP is a state actor because it suspended her deputy branch pilot certificate must fail. *See* (D.E. 57, p. 10). ACCP did not suspend Plaintiff's deputy branch pilot certificate, *see* (D.E. 58, p. 3); rather, Plaintiff was suspended from ACCP's training program, and her deputy branch pilot certificate expired by operation of law. *Id.*; *see also* (D.E. 57-1, p. 2) (ACCP suspended Plaintiff from its training program when she "had a deputy certificate").[2]

Lastly, to the extent Plaintiff argues ACCP is a state actor because two of its pilots are members of the Pilot Review Board, this argument is also unavailing. *See* (D.E. 57, p. 11) (referencing TEX. TRANSP. CODE ANN. § 70.018). Texas law requires that the Pilot Review Board include "two active state-commissioned pilots serving the Port of Corpus Christi[.]" TEX. TRANSP. CODE ANN. § 70.018. While the two state-commissioned pilots currently on the Pilot Review Board are ACCP members, *see* (D.E. 58, p. 8), their membership in such is not a statutory requirement, *see* TEX. TRANSP. CODE ANN. § 70.018. Moreover, even assuming that the Pilot Board is a state actor, being on the Pilot Review Board does not reach the level of entwinement necessary to attribute any ACCP action to the state. *See Brentwood*, 531 U.S. at 296; *Bass*, 180 F.3d at 242. The Pilot Review Board "make[s] recommendations to the board" concerning complaints that come before it. TEX. TRANSP. CODE ANN. § 70.018. It is not authorized to take official action, make decisions in the name of the Pilot Board, or regulate other pilots. *See id.*; (D.E. 58, p. 8); *cf. Brentwood*, 531 U.S. at 299 (noting the defendant association was composed of

---

[2] To the extent Plaintiff may be arguing that ACCP constructively suspended her deputy branch pilot certificate by suspending her from its training program, this argument also fails as Plaintiff did not show that being suspending from ACCP's training program prevented her from piloting vessels generally. *See* TEX. TRANSP. CODE ANN. § 70.031 (requiring branch pilot license *or* deputy pilot certificate to provide pilot services for the Port of Corpus Christi).

public school officials who selected other public school officials to be representatives of the association who then adopted and enforced rules supporting interscholastic sports throughout the state).

In summation, the summary judgment evidence demonstrates that ACCP did not act under color of state law. ACCP is composed of private actors, and it is not so entwined with the Pilot Board to render it a state actor (assuming for purposes of ACCP's summary judgment motion that the Pilot Board is a state actor). *See Brentwood*, 531 U.S. at 296. Nor is the Pilot Board interdependent with ACCP in a manner that would designate ACCP as a state actor (assuming for the purposes of ACCP's summary judgment motion that the Pilot Board is a state actor). *See Bass*, 180 F.3d at 242.[3] As such, Plaintiff cannot prevail on her § 1983 claim, and it is unnecessary for the Court to reach the second element of Plaintiff's § 1983 claim. *See* 42 U.S.C. § 1983; *Bauer*, 341 F.3d at 357 (finding that a successful § 1983 claim requires a plaintiff to show that a state actor committed the offending conduct *and* that the conduct deprived the plaintiff of a federal right). ACCP is entitled to judgment as a matter of law. *See Terral River Serv.*, 20 F.4th at 1017– 18. The Court **GRANTS** ACCP's motion for summary judgment. (D.E. 50).

## V. The Pilot Board's Motion for Summary Judgment

Plaintiff brings two overarching § 1983 claims against the Pilot Board. *See* (D.E. 56, p. 11– 14). She alleges that the Pilot Board deprived her of her Fourteenth Amendment Due Process interests and that the Pilot Board subjected her to discrimination and retaliation based on her gender. *Id.* at 11–14. The Pilot Board now moves for summary judgment. (D.E. 59). However, unlike ACCP, neither the Pilot Board nor Plaintiff disputes that the Pilot Board is a state actor.

---

[3] While not explicitly advanced by either party, the Court also finds that ACCP did not perform a function exclusively in the province of the state nor did the state exercise any coercive power over ACCP such that its choices must be considered that of the state. *See Bass*, 180 F.3d at 241–42.

Rather, the Pilot Board argues that it is entitled to summary judgment because "Plaintiff cannot establish a violation of any constitutionally protected right and liability cannot be imposed on the Pilot Board as Plaintiff cannot show a causal connection between any constitutional violation and an official Pilot Board custom or policy." (D.E. 59, p. 1–2). As such, the Court will assume, without deciding, that the Pilot Board is a state actor.

### A. Deprivation of Fourteenth Amendment Due Process Interests

Plaintiff claims that the Pilot Board subjected her to de facto licensing discrimination and deprived her of interests in her deputy branch pilot certificate, branch pilot license, ACCP training program, right to pursue her chosen occupation, and right to contract. *See* (D.E. 56, p. 11–14; D.E. 60, p. 6–16). Plaintiff also argues that the Pilot Board deprived her of her right to procedural due process prior to being terminated and relative to her professional reputation. (D.E. 56, p. 12). Her claims fail.

Underlying Plaintiff's claims is her contention that the Pilot Board oversees ACCP and as such had a duty to investigate her complaint of threats and harassment by ACCP and failed to do so. *See* (D.E. 56, p. 11–14; D.E. 60, p. 5, 7–9). According to Plaintiff, this resulted in the Pilot Board sanctioning ACCP's discriminatory actions, "in clear violation of the Act's prohibition against discrimination based on sex" and should be considered "de facto licensing discrimination[.]" *Id.* at 8–9 (citing *Phillips v. Vandygriff*, 711 F.2d 1217 (5th Cir. 1983)). The Pilot Board argues that Plaintiff never complained of gender discrimination, and it cannot be liable for sanctioning discriminatory conduct of which it was unaware. *See* (D.E. 61, p. 11–12). However, Plaintiff did provide notice to the Pilot Board of a hostile work environment when she attached her letter to Captain Monaco to her email to the Pilot Board's secretary. (D.E. 60-5, p. 3) ("I have had an unprecedented set of challenges during my tenure as a Deputy Pilot . . . includ[ing] threats

15 / 23

and harassment by fellow pilots to the point where it can reasonably be deemed a hostile work environment."). Whether this is sufficient to put the Pilot Board on notice of ACCP's alleged misconduct is a fact question not appropriately resolved on summary judgment. *See Little*, 37 F.3d at 1075. However, even assuming that the Pilot Board was on notice of the alleged discrimination, Plaintiff's claims fail.

The Pilot Board is statutorily prohibited from discriminating against a pilot or pilot applicant "because of race, religion, sex, ethnic origin, or national origin" in "all its duties[.]" TEX. TRANSP. CODE Ann. § 70.019. The Pilot Board's duties, as stated in Texas Transportation Code § 70.017,[4] do not include establishing a training program or overseeing ACCP's deputy training program. *See id.*; (D.E. 59, p. 13; D.E. 59-1, p. 3; D.E. 61-1, p. 2). Accordingly, the Pilot Board could not have sanctioned ACCP's allegedly discriminatory conduct in terminating Plaintiff from the deputy branch training program, nor could it have deprived Plaintiff of any interest in ACCP's training program, as it did not have authority to dictate how ACCP conducted the training program. *See* (D.E. 59, p. 13); *see also* (D.E. 59-1, p. 7) ("The Pilot Board did not have the authority to

---

[4] The Pilot Board's duties include the following:

    (1) recommend to the governor the number of pilots necessary to provide adequate pilot services for the Port of Corpus Christi;
    (2) examine and determine the qualifications of each applicant for branch pilot;
    (3) submit to the governor the names of persons who have qualified under this chapter to be appointed as branch pilots;
    (4) establish pilotage rates;
    (5) approve any changes of the locations of pilot stations;
    (6) establish times during which pilot services will be available;
    (7) hear and determine complaints relating to the conduct of pilots;
    (8) make recommendations to the governor concerning any pilot whose license or certificate should not be renewed or should be revoked;
    (9) adopt rules and issue orders to pilots and vessels when necessary to secure efficient pilot services; and
    (10) institute investigations or hearings or both to consider casualties, accidents, or other actions that violate this chapter.

*Id.* § 70.017

compel ACCP to continue to dispatch Captain Morrison to vessels.") Failure to investigate the operations of a program which the Pilot Board did not control and did not have the authority to change does not constitute de facto licensing or sanctioning of conduct. *Cf. Phillips*, 711 F.2d at 1223 (finding that Commissioner of the Texas Savings and Loan Department's failure to recommend a prospective employee for employment with a private company in the savings and loan industry was de facto licensing actionable under § 1983 due to a state-wide industry custom of not employing anyone in the position being sought without the Commissioner's recommendation, thus limiting the plaintiff's employment opportunities within the entire industry). And Plaintiff fails to provide evidence, outside of conclusory allegations, that the Pilot Board could have controlled ACCP's deputy branch pilot training program.

Relatedly, the Pilot Board did not take any adverse action against Plaintiff that would amount to a § 1983 violation. Regarding Plaintiff's deputy branch pilot certificate, the Pilot Board did not suspend or terminate it; her deputy branch pilot certificate remained in effect until it expired by operation of law on December 16, 2019. (D.E. 59, p. 8; D.E. 59-1, p. 6); *see also* TEX. TRANSP. CODE ANN. § 70.039(b). Additionally, the Pilot Board did not prevent Plaintiff from applying to become a branch pilot. Plaintiff never filed an application. (D.E. 59-1, p. 6; D.E. 59-4, p. 7); *cf. Phillips*, 711 F.2d at 1220 (noting plaintiff was unable to find employment in his industry despite attempts to do so). Contrary to Plaintiff's assertion that it is a fact issue on whether a formal application is necessary for advancement from deputy branch pilot to branch pilot, (D.E. 60, p. 15), the Corpus Christi Act expressly requires that an applicant for branch pilot "give the [Pilot Board] a written application[,]" TEX. TRANSP. CODE ANN. § 70.034; *see also* (D.E. 61, p. 3). Plaintiff did not apply for a branch pilot license, and the Pilot Board did not prevent her from doing so. (D.E. 59-4, p. 7; D.E. 61, p. 9, 13–15; D.E. 61-1, p. 8).

Moreover, because the Pilot Board did not deprive Plaintiff of a branch pilot license (as she did not apply for one) nor did it sanction ACCP's suspension of her training, the Pilot Board did not deprive Plaintiff of her right to pursue a chosen occupation. *See* (D.E. 59, p. 14–15); *see also Shaw v. Hosp. Auth. of Cobb Cnty.*, 507 F.2d 625, 628 (5th Cir. 1975) ("[R]ight to practice any of the common occupations of life" is a liberty interest). Plaintiff retained her deputy branch pilot certificate, and she fails to point to any evidence that would indicate she could not continue providing pilotage services as a deputy branch pilot outside of the ACCP training program. *See* (D.E. 61, p. 15); *see also* TEX. TRANSP. CODE Ann. § 70.031 (authorizing mariner to provide pilot services if he or she has a certificate issued under the Corpus Christi Act).[5]

Nor did the Pilot Board deprive Plaintiff of her right to contract. The only evidence of a contract in the summary judgment record that Plaintiff points to is the Pre-Articles of Agreement, (D.E. 60-10), and the Pilot Board meeting minutes detailing the Pilot Board's approval of Plaintiff's appointment to the ACCP training program, (D.E. 60-9). (D.E. 60, p. 16). Assuming, without deciding, that these documents establish a contract between Plaintiff and the Pilot Board, Plaintiff still fails to establish a claim under § 1983 as there is no evidence that Plaintiff had a contractual right to *continued* employment. *See White v. Miss. State Oil & Gas Bd.*, 650 F.2d 540, 541 (5th Cir. 1981) ("A protected property interest in employment exists only where the employee has an express or implied right to continued employment."); *see also* (D.E. 60-10, p. 4) (noting, in

---

[5] As a practical matter, the Court recognizes that Plaintiff has obtained employment since being dismissed from ACCP's training program. *See* (D.E. 60-6, p. 16–17). Plaintiff is currently employed as a mooring master for a Houston-based company. *Id.* A mooring master handles ships and maneuvers "large vessels to facilitate cargo transfer." *Id.* at 17. This contrasts with *Phillips*, which Plaintiff relies on throughout her response to the Pilot Board's motion for summary judgment, as the plaintiff in that case was entirely excluded from employment in his industry. *See Phillips*, 711 F.2d at 1220; *see also Vander Zee v. Reno*, 73 F.3d 1365, 1370 (5th Cir. 1996) (declining to find de facto licensing where plaintiff was not prevented from obtaining employment at a separate company within his industry); *Connelly v. Comp. of Currency*, 876 F.2d 1209, 1213 (5th Cir. 1989) (noting plaintiff could not successfully argue that defendant's conduct amounted to de facto license revocation when plaintiff gained employment within his industry).

Pre-Articles Agreement signed by Plaintiff, that "[t]his is not a contract of employment for any fixed period"). Accordingly, Plaintiff was not unconstitutionally deprived of her right to contract.

Similarly, Plaintiff did not have a constitutional right to procedural due process prior to being suspended. In Texas, there is a presumption of at-will employment. *Muncy v. City of Dall.*, 335 F.3d 394, 398 (5th Cir. 2003). While certain employment situations "may endow an employee with a legally cognizable property interest[,] . . . a property interest is not incidental" to employment. *Muncy*, 335 F.3d at 398. Rather, a property interest in continuing employment may be created where the governmental entity abrogates "its right to terminate an employee without cause." *Id.* Here, the Pilot Board did not terminate or suspend Plaintiff, it did not suspend Plaintiff's deputy branch certificate, and it did not prevent Plaintiff from submitting a branch pilot application. *See* (D.E. 61-1, p. 6–8). Further, even assuming a contract between the Pilot Board and Plaintiff was formed, there is no evidence that the Pilot Board did anything to abrogate the presumption of at-will employment in Texas. *See Muncy*, 335 F.3d at 398; (D.E. 60-10, p. 4)

The Pilot Board also did not deprive Plaintiff of her procedural due process relative to her professional reputation. "When a person's good name, reputation, honor, or integrity is at stake due to an action by the government, he is entitled to notice and an opportunity to be heard." *Sims v. City of Madisonville*, 894 F.3d 632, 642 (5th Cir. 2018). "A government employer deprives an employee of liberty . . . if the 'government employer discharges [the] individual under circumstances that will do special harm to the individual's reputation and fails to give that individual an opportunity to clear his name[.]'" *Cunningham v. Castloo*, 983 F.3d 185, 191 (5th Cir. 2020) (citing *Rosenstein v. Dallas*, 876 F.2d 392, 395 (5th Cir. 1989)). To succeed on a deprivation-of-professional-reputation claim, Plaintiff must show that her government employer (1) discharged her; (2) that "stigmatizing charges were made against her in connection with the

discharge; (3) the charges were false; (4) she was not provided notice or an opportunity to be heard pre-discharge; (5) the charges were made public; (6) she requested a hearing to clear her name;" and (7) her request was denied. *Id.* at 192.

Here, even assuming that the Pilot Board was Plaintiff's employer, it did not deprive Plaintiff of her procedural due process relative to her professional reputation because the Pilot Board did not discharge Plaintiff, (D.E. 59, p. 16), and Plaintiff did not request that the Pilot Board hold a name-clearing hearing, (D.E. 61, p. 15). Plaintiff's argument that her letter to the Pilot Board secretary constitutes a request for a name-clearing hearing, *see* (D.E. 60, p. 16), fails because "[t]hough an employee need not use the term 'name-clearing hearing' . . . the employee must still petition the employer in a manner that can be construed as asking for an opportunity to clear his name." *Bledsoe v. City of Horn Lake*, 449 F.3d 650, 653 (5th Cir. 2006) (citing *Rosenstein*, 876 F.2d at 396). Here, Plaintiff failed to do so as her letter informing the Pilot Board of her suspension only stated her belief that the Pilot Board "should be notified of the situation if they had not been previously informed"—she did not request that the Pilot Board take any action. *See* (D.E. 60-5, p. 2).

### B. Equal Protection Claims

Nor did the Pilot Board violate Plaintiff's Equal Protection rights. Plaintiff alleges that the Pilot Board discriminated against her based on gender and retaliated against her in violation of the Equal Protection Clause. *See* (D.E. 56, p. 11). More specifically, Plaintiff alleges that the Pilot Board subjected her to "intentional and unlawful discriminatory practices based upon her gender in the application of policies regarding placement of job, job considerations, pay, demotions, the handling of complaints, and other terms, conditions, and privileges of Plaintiff's employment[;]" deprived Plaintiff of "equal protection under the law" by "not exercising its duties as an oversight"

of ACCP; treated Plaintiff "differently and less favorably" than male employees who "were given better opportunities for advancement and evaluated under less rigid standards[;]" and that "Defendants have a pattern and practice of treating female employees less favorably than males[,]" which constitutes "an official [Pilot Board] custom or policy[.]" *See* (D.E. 56, p. 11–13). However, as explained below, Plaintiff's claims fail because the Pilot Board did not take adverse action against Plaintiff, retaliation is not valid claim under the Equal Protection Clause, and Plaintiff has not raised a material issue of fact regarding the existence of an official Pilot Board custom or policy that caused the alleged violations.

To establish a prima facie case of gender discrimination under § 1983 in the employment context, a plaintiff must show that: (1) he or she is a member of a protected class; (2) he or she was qualified for the position at issue; (3) the defendant made an adverse employment decision despite the plaintiff's qualifications; and (4) the plaintiff was replaced with a person that was not a member of the protected class. *Southard v. Tex. Bd. of Crim. Just.*, 114 F.3d 539, 554 (5th Cir. 1997). Here, Plaintiff fails to establish a prima facie case of discrimination. While Plaintiff is a member of a protected class, the Pilot Board did not subject Plaintiff to adverse employment decisions—the Pilot Board did not discharge Plaintiff from the deputy branch pilot training program, suspend her deputy branch pilot certificate, or prevent her from applying to become a branch pilot. *See* (D.E. 59-1, p. 5–6; D.E. 59-4, p. 7).

Additionally, Plaintiff's claim that she was retaliated against in violation of the Equal Protection Clause fails. While "claims of retaliation are commonly brought under the First Amendment and may also be brought under Title VII, retaliation claims growing out of complaints of employment discrimination have not been recognized under the Equal Protection Clause of the Fourteenth Amendment." *Matthews v. City of West Point*, 863 F. Supp. 2d 572, 604 (N.D. Miss.

2012) (Aycock, J.); *see also Fisher v. Dallas Cnty.*, No. 3:12-CV-3604-D, 2014 WL 4797006, at *9 (N.D. Tex. Sep. 26, 2014) (Fitzwater, J.) (noting the Equal Protection Clause does not provide a cause of action for retaliation and collecting cases saying same). As such, Plaintiff's claim for retaliation under the Equal Protection Clause is not legally cognizable and must be denied.[6]

Lastly, Plaintiff's claim that the Pilot Board has an official custom or policy of discriminatory practices, *see* (D.E. 56, p. 13), must fail. To establish liability based on a governmental entity's policy or customs, a Plaintiff must identify (1) an official policy or custom; (2) which the entity's policymaker knew of; and (3) which caused a constitutional violation. *See Valle v. City of Hous.*, 613 F.3d 536, 541–42 (5th Cir. 2010).

Here, Plaintiff has failed to raise a material issue of fact on the existence of an official custom or policy that caused the Pilot Board's alleged violations of the Equal Protection Clause. *See* (D.E. 59, p. 20). Plaintiff's complaint fails to identify the Pilot Board's underlying "custom or policy" at issue. *See* (D.E. 56, p. 13). Rather, Plaintiff summarily states that "Defendants have a pattern and practice of treating female employees less favorably than males[,]" and "Defendants' actions are an official custom or policy of . . . the Pilot Board . . . ." *See id.* Plaintiff's response to the Pilot Board's motion for summary judgment also fails to identify an unconstitutional official custom or policy; rather, Plaintiff states that "[t]he Pilot Board's failure to investigate ACCP's 'suspension' of Morrison is state action and qualifies the Pilot Board as a state actor and a violation of her constitutional rights." *See* (D.E. 60, p. 18). This allegation is not evidence of an official

---

[6] Additionally, Plaintiff failed to respond to the Pilot Board's summary judgment argument that retaliation is not a cognizable claim under 42 U.S.C. § 1983. *See* (D.E. 59, p. 18–19) (disputing Plaintiff's retaliation claim); (D.E. 60) (lacking analysis on or support for retaliation claim). As such, Plaintiff has not borne her summary judgment burden with respect to this claim. *See Brush*, 911 F. Supp. 2d at 457.

policy or custom of the Pilot Board. Accordingly, Plaintiff's claim fails. As such, the Court

**GRANTS** the Pilot Board's motion for summary judgment. (D.E. 59).

## VI. CONCLUSION

For the reasons stated herein, the Court holds as follows:

(1) The Court **GRANTS** Defendant Pilot Board's Motion to Strike D.E. 60-7 as Plaintiff failed to substantially comply with the requirements for unsworn declarations under 28 U.S.C. § 1746(2). (D.E. 61, p. 18).

(2) The Court **GRANTS** Defendant Pilot Board's Motion to Strike D.E. 60-8 as Plaintiff failed to substantially comply with the requirements for unsworn declarations under 28 U.S.C. § 1746(2). (D.E. 61, p. 18).

(3) The Court **GRANTS** summary judgment in favor of Defendant ACCP on Plaintiff's 42 U.S.C. § 1983 claims because ACCP is not a state actor. (D.E. 50).

(4) The Court **GRANTS** summary judgment in favor of Defendant Pilot Board finding that Plaintiff has not met her summary judgment burden with respect to any of her 42 U.S.C. § 1983 claims. (D.E. 59).

A final judgment will be entered separately.

SO ORDERED.

DAVID S. MORALES
UNITED STATES DISTRICT JUDGE

Dated: Corpus Christi, Texas
November 15, 2022